In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2146

DANIELLE PICKETT,

*Plaintiff-Appellant,*

*v.*

SHERIDAN HEALTH CARE CENTER,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 1722—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED OCTOBER 27, 2011—DECIDED DECEMBER 15, 2011

Before FLAUM, KANNE, and WOOD, *Circuit Judges.*

FLAUM, *Circuit Judge.* Ernest T. Rossiello & Associates, P.C. successfully represented plaintiff Danielle Pickett in a Title VII retaliation suit against her employer, defendant Sheridan Health Care Center ("Sheridan"). The jury awarded $65,000 in damages to Pickett, and her attorneys then sought to recover attorneys' fees in the amount of $131,665.88. The district court granted plaintiff's fee request in part and denied it in part, resulting in a fee award to Rossiello of $70,000.

Although we appreciate the district court's desire to limit the substantial fees that Rossiello stands to recover from this case, we conclude that the district court looked to certain impermissible considerations in calculating the fee award. Most significantly, the district court erred to the extent that it relied on the existence of the contingent fee agreement to reduce the statutory fee award. Further, the court should have provided plaintiff with an opportunity to respond before applying the Consumer Price Index ("CPI") and the Laffey Matrix, and the court should have provided a clear explanation as to how it arrived at the hourly rate of $400. Finally, the district court erred in reversing its award of fees to outside counsel. We therefore vacate the award of attorneys' fees and remand for further proceedings.

## I. Background

The present dispute over attorneys' fees stems from litigation brought under Title VII of the Civil Rights Act of 1964. Pickett claimed that she was fired from her job as a housekeeper for complaining to management about being sexually harassed by residents of the Sheridan Health Care Center, a nursing home. The district court granted Sheridan's motion for summary judgment on the sexual harassment claim but permitted the retaliation claim to go to trial. After a two-day trial, the jury returned a verdict for plaintiff in the amount of $65,000, consisting of $15,000 in compensatory damages and $50,000 in punitive damages. In addition, the district court awarded equitable relief, including back pay

of $1,357.42. We affirmed these judgments. *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434 (7th Cir. 2010). The parties then attempted but were unable to settle the issue of attorneys' fees.

Plaintiff's contract with her attorneys requires her to pay a 33.33% contingent fee and a $7,500 flat fee, in addition to assigning her statutory right to fees. The contract states that no portion of the contingent fee will be credited towards the statutory fee and that any statutory award is in addition to the contingent fee. Plaintiff sought a statutory award of $131,665.88 in attorneys' fees and $1,271.27 in costs. Accompanying the fee petition was an affidavit from Rossiello, affidavits from three experienced employment lawyers in Chicago, evidence of Rossiello's past fee awards, time and billing records for this case, and time records from *Davis v. Electrical Insurance Trustees*, No. 06C5913, a two-day Title VII case decided around the same time. Plaintiff also filed three motions requesting an evidentiary hearing on the fee petition, but none was held.

On March 29, 2011, the district court issued an opinion that granted in part and denied in part plaintiff's request for fees and costs. The court eliminated 20 hours due to Rossiello's failure to remove hours spent on the losing sexual harassment claim. The court further reduced the award by 2.17 hours of associate time because Rossiello should not have been supervising while suspended from the practice of law. The district court then reduced the fee award due to duplicative work on the fee petition: even though Rossiello had retained outside counsel,

Abrahamson, Vorachek & Levinson ("Abrahamson"), to prepare the fee petition, Rossiello also spent 17.16 hours on this task. The court awarded Rossiello only 10 of those hours but approved all 13.75 of Abrahamson's hours.

Moreover, the court determined that Rossiello had not established his claimed hourly rate of $592.50 to be his market rate. The district court instead used the CPI and the Laffey Matrix (a measure used by some district courts to determine hourly rates), even though neither methodology had been presented by the parties. The district court then noted "most significantly" that Rossiello was entitled to receive a contingent fee and a flat fee, in addition to the statutory fee. The court stated that "[i]n light of this agreement, the evidence that Mr. Rossiello cites in support of his very substantial hourly fee is less persuasive" and concluded that "an hourly rate of $400 will amply compensate" him.

The district court ordered the parties to submit an agreed calculation of the amounts owed in accordance with its opinion. The parties arrived at a reduced fee award of $70,000 (175 hours at $400 per hour) for Rossiello and $9,268.79 in fees and costs for Abrahamson. The district court then entered its final award two days later, awarding $70,000 in fees to plaintiff for Rossiello's work. Unexpectedly, the court denied the $9,268.79 award to Abrahamson, reversing its previous position on the ground that Rossiello had failed to establish that he had prepaid Abrahamson's fees.

Plaintiff now appeals certain aspects of the district court's fee reduction. Specifically, plaintiff argues that the

district court improperly reduced Rossiello's hourly rate based on the contingent fee agreement and that the court improperly rejected the evidence submitted by Rossiello in support of his claimed hourly rate. Plaintiff also argues that the district court should not have applied the CPI adjustment or the Laffey Matrix without prior notice. Plaintiff further contends that the court failed to explain how it arrived at an hourly rate of $400 and that it abused its discretion in refusing to conduct an evidentiary hearing regarding attorneys' fees. Finally, plaintiff argues that the district court erred in denying Abrahamson's fees on the ground that they had not been prepaid.

## II. Discussion

### A. Standard of Review

We review the award of attorneys' fees for abuse of discretion. *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009). This is a "highly deferential abuse of discretion standard." *Estate of Borst v. O'Brien*, 979 F.2d 511, 514 (7th Cir. 1992). We accord this significance deference to the district court because: "(1) it possesses 'superior understanding of the litigation and [there exists a] desirability of avoiding frequent appellate review of what essentially are factual matters'; (2) the need for uniformity in attorneys' fees awards is not great enough to warrant appellate review of minutia; and (3) the desirability of avoiding 'a second major litigation' strictly over attorneys' fees is high." *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 645 (7th

Cir. 1995) (citation omitted) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). But even this "'wide latitude' is not unlimited latitude, and the district court still bears the responsibility of justifying its conclusions." *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010); *see also Perdue v. Kenny A.*, 130 S. Ct. 1662, 1676 (2010).

We review the district court's "legal analysis and methodology" de novo, *see Anderson*, 578 F.3d at 544, because "the justifications for the generally deferential standard of review are absent" when the district court denies a fee award based on a legal principle. *Jaffee v. Redmond*, 142 F.3d 409, 412 (7th Cir. 1998).

## B. Reasonable Hourly Rate

In Title VII actions, the prevailing party may recover reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k).[1] To determine a reasonable fee, the district court uses the lodestar method, multiplying the "number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The lodestar approach forms the "centerpiece" of attorneys' fee determinations, and it applies even in cases where the attorney represents the prevailing party pursuant to a contingent fee agreement. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). There is a strong pre-

---

[1] The standards for determining reasonable attorneys' fees in a Title VII action are the same as those used to determine 42 U.S.C. § 1988 fees. *See Hensley*, 461 U.S. at 433 n.7.

sumption that the lodestar calculation yields a reasonable attorneys' fee award. *See Perdue*, 130 S. Ct. at 1673; *Eddleman v. Switchcraft, Inc.*, 927 F.2d 316, 318 (7th Cir. 1991).

We have defined a reasonable hourly rate as one that is "derived from the market rate for the services rendered." *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003). We presume that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate. *Id.* The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). If the fee applicant satisfies this burden, the burden shifts to the other party to offer evidence that sets forth "a good reason why a lower rate is essential." *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1313 (7th Cir. 1996) (internal quotation marks omitted) (quoting *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993)).

Recognizing the difficulty of determining the hourly rate of an attorney who uses contingent fee agreements, we have advised district courts to rely on the "next best evidence" of an attorney's market rate, namely "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 555 (7th Cir. 1999); *see also People Who Care,* 90 F.3d at 1310. Of these two alternatives, we have indicated a preference

for third party affidavits that attest to the billing rates of comparable attorneys. *See Spegon*, 175 F.3d at 556. If a fee applicant does not satisfy its burden, the district court has the authority to make its own determination of a reasonable rate. *See Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999). Once the district court has established the lodestar, the court may adjust it to account for factors not subsumed by the lodestar calculation. *See Perdue,*130 S. Ct. at 1673.

### 1.  Reduction Due to Contingent Fee Arrangement

In reducing Rossiello's hourly rate from $595 to $400, the district court appears to have relied in part on the fact that Rossiello will recover a contingent fee and a flat fee, amounting to nearly $30,000, aside from any statutory fees. The district court criticized Rossiello for not using the statutory award to offset Pickett's contingent fee obligation, noting that he did not cite to any case that has enforced "an agreement that so gener[ous]ly compensates counsel." The district court also found the third party affidavits presented by plaintiff to be less persuasive because those attorneys did not receive contingent fees on top of their hourly rates. The district court further seemed to rely on its notions of fairness in concluding that "an hourly rate of $400 will amply compensate Mr. Rossiello."

We are unsure whether the court reduced the rate to prevent excessive recovery (i.e., reducing the rate by nearly 30% to balance out the 30% contingent fee) or whether it reduced the rate due to the lower persuasive weight

of the affidavits from non-contingent-fee-earning attorneys—but we hold that either approach constitutes reversible error. The contingent fee that an attorney earns from his client and the statutory fee that an attorney recovers from the losing party represent distinct entitlements. In reviewing a fee petition, a district court is tasked only with examining whether the rate and hours requested are reasonable; the total amount that the attorney stands to recover must not influence this determination. We therefore vacate the award of attorneys' fees and remand to the district court to redetermine Rossiello's reasonable hourly rate without consideration of the contingent fee.

The Supreme Court has made clear that courts are to use the lodestar method to calculate the statutory fee even when the attorney does not bill by the hour. *See Venegas v. Mitchell*, 495 U.S. 82, 87 (1990); *Blanchard*, 489 U.S. at 94 ("We have never suggested that a different approach is to be followed in cases where the prevailing party and his (or her) attorney have executed a contingent-fee agreement."); *Blum*, 465 U.S. at 894. Because contingent-fee-earning attorneys do not possess the hourly billing rate needed to compute the lodestar, both the Supreme Court and this court have instructed courts to rely on the hourly rates that attorneys of comparable skill, experience, and reputation charge for similar work. *See Blum*, 465 U.S. at 894-95 & n.11; *People Who Care*, 90 F.3d at 1310. Neither the Supreme Court nor this court has implied that district courts should adjust the hourly rate of comparable attorneys to reach an hourly rate for a contingent-fee-earning attorney.

Despite recognizing the lodestar method as "not perfect," the Supreme Court recently extolled its virtues and reaffirmed its dominant role in federal fee-shifting cases. *See Perdue*, 130 S. Ct. at 1672. The Court observed that the lodestar method: (1) "produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case," (2) "is readily administrable," and (3) "is 'objective' and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Id.* (citation omitted) (quoting *Hensley*, 461 U.S. at 433). The Court contrasted the lodestar method with the earlier approach from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), which had provided twelve (largely subjective) factors to consider when determining a reasonable fee. *See Perdue*, 130 S. Ct. at 1671-72. The Court criticized the *Johnson* approach for yielding minimal guidance, disparate results, and unlimited discretion. *See id*. The Court had similarly relied on the virtues of the lodestar method when the Court ruled out contingency enhancements to the lodestar. *See City of Burlington v. Dague*, 505 U.S. 557, 566 (1992) (citing interests of "ready administrability" and the avoidance of "burdensome satellite litigation," which arise when contingency enhancements make fee determinations "more complex and arbitrary").

The Supreme Court has balanced the advantages and disadvantages of using the lodestar approach and has concluded that the lodestar's imperfect estimate is prefera-

ble to a multifactor, case-by-case attempt to more accu-
rately determine the fee. The district court in this case went
beyond the bounds of the lodestar method when it reduced
Rossiello's hourly rate by a factor that has no bearing
on the prevailing market rate. We recognize the district
court's desire to craft a more accurate award, but the
Supreme Court adopted the lodestar approach to prevent
this type of unbounded discretion.

Moreover, a fee applicant need only offer third party
affidavits attesting to billing rates that truly are compara-
ble to meet her burden, *see Spegon*, 175 F.3d at 556—she
does not need to establish that her attorney would receive
this hourly rate on top of a contingent fee. *Cf. Dague*,
505 U.S. at 566-67 ("It is neither necessary nor even possible
for application of the fee-shifting statutes to mimic
the intricacies of the fee-paying market in every respect.").
The court is to consult the same market when determining
a reasonable hourly rate for contingent fee cases and non-
contingent fee cases. *See id.* at 564 (rejecting an approach
that would require courts to look to a market of contingent-
fee cases). Here, the district court reduced the hourly
rate established by the comparators based on a presump-
tion that those attorneys are able to bill at the high
rates only because hourly billing represents their sole
form of remuneration. But the opposite argument also
has merit: the hourly rate could be adjusted upward
because hourly-billing attorneys have the security
of knowing that, win or lose, they will receive that rate,
whereas contingent-fee-earning attorneys actually need
to recover above their "market rate" in cases they win

to balance out cases where they lose and recover nothing.[2] *Cf., e.g., Medders v. Autauga Cnty. Bd. of Educ.*, 858 F. Supp. 1118, 1125-26 (M.D. Ala. 1994) (argument made by counter-plaintiffs). There is thus no guarantee that the district court's downward adjustment yields a more accurate rate, and this approach conflicts with the Supreme Court's guidance.[3]

Further, when a district court deems a third party affidavit to carry less persuasive value because the affiant bills by the hour, the court erects an obstacle to the recovery of statutory fees by contingent-fee-earning attorneys. This is particularly problematic given that many civil rights plaintiffs cannot afford to pay attorneys by the hour. *See City of Riverside v. Rivera*, 477 U.S. 561, 576-77 (1986). The contingent fee arrangement creates the need to look to evidence of comparable lawyers—but these comparable lawyers must bill by the hour in order to help with the lodestar calculations.

---

[2] In fact, prior to *Dague*'s prohibition of contingency enhancements to the lodestar, we had allowed upward adjustments to more effectively compensate contingent-fee-earning attorneys for the "risk of never being paid and the time-value of money." *See Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 660 (7th Cir. 1985).

[3] To precisely translate the earnings of a contingent-fee attorney into an hourly rate equivalent, we would need to divide each of the attorney's past contingent fee awards by the number of hours spent on each case. This approach would result in widely varying rates, administrative difficulties, and tension with the instructions of Supreme Court.

The Supreme Court has recognized that private fee arrangements and statutory fee awards can coexist. *See Venegas*, 495 U.S. at 88. The Court has repeatedly distinguished between the statutory fee award, which compels the losing party to compensate the prevailing party for the attorney's services, and the contingent fee, which the plaintiff may contract to pay her attorney. *See id.* at 90. This perspective conveys to district courts that they should view these fees as distinct and not allow a contingent fee to influence the determination of the reasonableness of an hourly rate. When a district court reduces an attorney's hourly rate because the attorney also stands to receive a contingent fee from the plaintiff, the defendant is no longer paying the attorney's full market value (i.e., reasonable hours spent multiplied by a reasonable hourly rate). The district court has essentially determined that the reduced statutory fee combined with the contingent fee will yield the market value. But this formulation is not what Congress or the Supreme Court intended. This attempt to prevent the plaintiff's attorney from recovering a windfall causes the defendant to receive a windfall benefit as it avoids its full fee-shifting obligation.

Moreover, the Supreme Court has repeatedly emphasized that a plaintiff is free to contract with her attorney to pay a contingent fee in addition to assigning rights to the statutory fee. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 806 (2002) (stating that, in fee-shifting cases, "nothing prevents the attorney for the prevailing party from gaining additional fees, pursuant to contract, from his own client."); *Venegas*, 495 U.S. at 86-89 ("[T]here is nothing in the section

to regulate what plaintiffs may or may not promise to pay their attorneys if they lose or if they win."). The Court has stated that, if civil rights plaintiffs are permitted to waive their causes of action entirely, "there is little reason to believe that they may not assign part of their recovery to an attorney if they believe that the contingency arrangement will increase their likelihood of recovery." *Venegas*, 495 U.S. at 88.

In attempting to prevent plaintiff's attorney from recovering a windfall, the district court impedes plaintiff's right to contract and plaintiff's ability to attract competent counsel. The Supreme Court has stated that "depriving plaintiffs of the option of promising to pay more than the statutory fee if that is necessary to secure counsel of their choice would not further § 1988's general purpose of enabling such plaintiffs in civil rights cases to secure competent counsel." *Venegas*, 495 U.S. at 89-90; *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) ("[T]he purpose of fee-shifting is to assure competent representation for plaintiffs rather than to make the cost of litigation to the successful plaintiff zero."). Reducing the statutory award due to the existence of the contingent fee has a similar effect of preventing a plaintiff from paying a contingent fee on top of a statutory fee—both actions constrain plaintiffs by limiting their contractual options and reducing the incentive for some attorneys to take their cases.

We do not intend to minimize the district court's duty to prevent windfall recovery to attorneys in fee-shifting cases. *See Rivera*, 477 U.S. at 580 ("Congress intended that

statutory fee awards be adequate to attract competent counsel but . . . not produce windfalls to attorneys." (internal quotation marks omitted)). However, this duty and its attendant discretion involve only the determination of whether the hours requested and the rate requested are reasonable. *See Hensley*, 461 U.S. at 433-34. The "very nature of recovery under § 1988 is designed to prevent . . . 'windfall'" because "[f]ee awards are to be reasonable, reasonable as to billing rates and reasonable as to the number of hours spent in advancing the successful claims." *Blanchard*, 489 U.S. at 96. Fee awards that are properly calculated using the lodestar method "by definition will represent the reasonable worth of the services rendered in vindication of a plaintiff's civil rights claim." *Id.*

In this case, the district court reduced the fee award for numerous reasons that fall squarely within its authority and discretion, such as subtracting hours spent on an unsuccessful claim and disallowing duplicative hours spent on fee recovery. The district court could have reduced Rossiello's claimed hourly rate if it found that the evidence did not support the claimed rate—e.g., because the third party affidavits are actually from attorneys with dissimilar experience or because the past fee awards support a lower rate.[4] *See Mathur v. Bd. of*

---

[4] In *Connolly v. National School Bus Service, Inc.*, 177 F.3d 593 (7th Cir. 1999), we held that the district court did not abuse its discretion in reducing Rossiello's hourly rate from $320 to $285 based on his failure to establish his market rate. Rossiello had

(continued...)

*Trustees of So. Ill. Univ.*, 317 F.3d 738, 743-44 (7th Cir. 2003). But the district court's authority to scrutinize the statutory fee award for reasonableness does not permit it to reduce the statutory award based on an additional amount that the attorney stands to recover. The Supreme Court has cautioned that "[w]hat a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order." *Venegas*, 495 U.S. at 90. Here, the district court erred by extending its reasonableness inquiry beyond the contours of the statutory fee award.

We are sympathetic to the court's perception that Rossiello stands to recover an excessive amount. But once the court has determined that the rate claimed and hours spent are reasonable, the district court's supervisory authority over statutory fee awards does not permit it

---

[4] (...continued)
represented the Title VII plaintiff pursuant to the same type of fee arrangement used here: $7,500 flat fee, one-third contingent fee, assignment of statutory fee, and prohibition on offset. *Id.* at 595. The district court lowered the rate after finding the past fee awards unpersuasive due to the lack of explanation as to how the courts had arrived at those rates. *Id.* at 596-97. The district court was instead persuaded by defendant's third party affidavits, which stated that Rossiello's rate exceeded rates that they would charge for similar work. *Id.* Thus, *Connolly* demonstrates that Rossiello's fee arrangement is not immune to judicial supervision—but the supervision is limited to the reasonableness of the rate and hours.

to reduce the lodestar to prevent the attorney from recovering a windfall.[5] *See id.*; *Van Gerwen v. Guarantee Mut. Life*

---

[5] We recognize that this fee agreement, which highly compensates Rossiello by requiring Pickett to turn over three types of fees, may unfairly take advantage of Pickett. Although the Supreme Court has recognized that a plaintiff has the freedom "to become contractually and personally bound to pay an attorney a percentage of the recovery," *Venegas*, 495 U.S. at 88, this particular contract seems to exact too high of a cost on an unsophisticated party seeking to vindicate her civil rights. We question whether Pickett understood the steep compensation arrangement that she agreed to. Our suspicions are bolstered by Rossiello's apparent disregard for proper "billing judgment," as required by *Hensley*, 461 U.S. at 437, evidenced by his request for hours spent on losing claims and hours spent while suspended from legal practice. Thus, we emphasize that, even though a court cannot exercise its supervisory authority to prevent a windfall by reducing an otherwise reasonable lodestar, a court may exercise this authority by scrutinizing a suspect contingent fee agreement, *see Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1111 (7th Cir. 1982).

We are aware that, even after *Venegas*, the Eighth Circuit has held that an attorney in a Title VII case is only entitled to the greater of the contingent fee award and the attorneys' fee award, effectively imposing a requirement that the statutory award offset the amount that the prevailing plaintiff owes to her attorney. *See Ross v. Douglas Cnty.*, 244 F.3d 620, 622 (8th Cir. 2001). The court relied on its "supervisory powers to ensure that contingency fee contracts are fair and reasonable" and on an earlier decision that required offset for an Equal Access to Justice Act fee award. *Id.*; *see Talbott v. Bowen*, 832 F.2d 111

(continued...)

*Co.*, 214 F.3d 1041, 1048 (9th Cir. 2001) ("A district court may not rely on a contingency agreement to increase or decrease what it determines to be a reasonable attorney's fee.").

As further support for our conclusion that the district court lacks the authority to lower the hourly rate due to the existence of a contingent fee agreement, the Supreme Court held in *Dague* that courts cannot enhance the lodestar to account for the risk of nonpayment incurred by attorneys who take cases pursuant to contingent fee agree-

---

[5]  (...continued)
(8th Cir. 1987). We decline to take this approach here since this appeal was brought by the losing party over the propriety of the statutory fee award. We also question whether this approach aligns with Supreme Court precedents regarding the limited scope of the reasonableness inquiry and its acceptance of private fee arrangements. Under the Eighth Circuit's approach, whenever the statutory award exceeds the contingent fee, a district court effectively voids the contingent fee arrangement by determining that counsel cannot recover more than the statutory award. We are not persuaded by *Talbott*, a two-paragraph order that does not cite any legal authority for its conclusion that plaintiff's counsel cannot receive both fees. Other courts have declined to take this bright-line approach. *See, e.g.*, *Quint v. A.E. Staley Mfg. Co.*, 245 F. Supp. 2d 162, 178 (D. Me.), *aff'd*, 84 F. App'x 101, 102 (1st Cir. 2003). Although we believe that a contingent fee contract that allows for offset can be more just, we cannot conclude that an offset provision is legally required.

ments.[6] 505 U.S. at 562. The Court deemed the multiplier impermissible because it would largely duplicate factors already subsumed into the lodestar calculation, since contingent fee cases tend to be difficult cases that require a significant amount of hours or a skilled attorney who commands a high hourly rate. *Id.* at 562-63. The Third Circuit has construed the reasoning underlying the *Dague*'s prohibition on contingent-fee-enhancements to apply equally to reductions. *See Guarnieri v. Borough*, 364 F. App'x 749, 755-56 (3d Cir. 2010), *vacated in part on other grounds sub nom.*, *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488 (2011). Moreover, the Ninth Circuit has construed *Dague* as an "outright rejection of contingency as a factor relevant to the establishment of a reasonable fee," reasoning that the Court's rejection of contingency as a basis for determining the lodestar multiplier similarly leads to a rejection of contingency as a basis for determining the hourly rate. *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993); *see also Medders*, 858 F. Supp. at 1126 (same);

---

[6] Though *Dague* involved fee-shifting provisions from the Solid Waste Disposal Act, 42 U.S.C. § 6972(e), and the Federal Water Pollution Control Act, 33 U.S.C. § 1365(d), the Court recognized that the language was similar to that of many other federal fee-shifting statutes and stated that "our case law construing what is a 'reasonable' fee applies uniformly to all of them." *Dague*, 505 U.S. at 561-62; *see also Eirhart v. Libbey-Owens-Ford Co.*, 996 F.2d 846, 852 (7th Cir. 1993) (extending *Dague*'s enhancement prohibition to Title VII).

*Watkins v. Fordice*, 807 F. Supp. 406, 417 (S.D. Miss. 1992) (same). These decisions provide further support for our conclusion that a court cannot adjust an hourly rate based on the existence of a contingent fee agreement.

For the foregoing reasons, we conclude that a district court may not reduce an attorney's hourly rate or disregard third party affidavits based on the existence of a contingent fee agreement. Here, the district court criticized the contingent fee agreement but did not explain how it reduced the rate to account for the additional recovery. The district court's language leaves us unable to conclude that the contingent fee arrangement played no part in the rate reduction. Thus, we remand to permit the district court to consider whether it would reach the same lodestar calculation in the absence of any consideration of the contingent fee.

### 2. Evidence Offered by Rossiello

Rossiello, as lead counsel, sought $592.50 for each hour that he spent on Pickett's case. In support of this rate, Rossiello presented records from a 2008 Title VII case in which he received fees at an hourly rate of $620 and copies of settlements in similar cases in which he obtained rates between $540 and $585 in 2007. The exhibits attached to plaintiff's fee petition demonstrate a significant range in the size of the recent awards obtained by Rossiello: $260 per hour in 1996; $305 per hour in 1996; $320 per hour in 1997; $350 per hour in 1999; $375 per hour in 1999; $475 per hour in 2002; and $500 in 2003. In addition to his own

affidavit, Rossiello produced affidavits from Richard Schnadig, Stephen Erf, and Vicki Lafer Abrahamson, who have each worked in employment law for more than 30 years. They offered their own hourly rates as support for the reasonableness of Rossiello's claimed rate of $580 to $620, and they stated that this rate is reasonable for someone with Rossiello's substantial experience and success in Title VII cases in Chicago. Schnadig and Erf asserted that the market rate for similarly experienced lawyers in their firms is $450 to $500 and $600 to $700, respectively. Abrahamson, a lawyer with less experience than Rossiello, stated her own rate as $550 for non-trial cases and noted that she would charge a higher rate for trial.

The district court found "little evidence" to support Rossiello's claimed rate. The court acknowledged that certain evidence indicates "more substantial rates in a handful of circumstances" and that "these affidavits, and the settlement agreements in 2007 and 2008, arguably support an award in the range Mr. Rossiello seeks," but the court expressed reluctance to approve that high rate here. We remind the district court not to "set[] the amount of evidence required at a nearly unattainable level," *People Who Care*, 90 F.3d at 1311, but we conclude that—with two exceptions—the district court acted within its discretion in determining that plaintiff's evidence did not support Rossiello's claimed rate.

A district court "is entitled to determine the probative value of each [evidentiary] submission." *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 895 (7th Cir. 2001).

The fact that we might have weighed the evidence differently does not necessarily mean that the district court abused its discretion. *Cf. Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir. 1986) ("There is no one correct formula for determining a fee award . . . ."). The highly deferential standard that we apply to the district court's determination of attorneys' fees counsels against disturbing the district court's determination here. We accord significant deference to the district court out of recognition that these disputes are essentially factual, that they do not need to be resolved in a uniform manner, and that we must avoid "a second major litigation" over fees. *See Spellan*, 59 F.3d at 645.

Although plaintiff provided some evidence that supports the requested rate, it is undeniable that substantial evidence supports much lower rates. Many of Rossiello's fee awards, even after accounting for inflation, use lower rates. In *Uphoff*, we stated that, "while evidence of fee awards in prior similar cases must be considered by a district court as evidence of an attorney's market rate, such evidence is not the *sine qua non* of that attorney's market rate—for each case may present its own special set of circumstances and problems." 176 F.3d at 408; *see also Spegon*, 175 F.3d at 557 ("[A] district court abuses its discretion not when it declines to follow another court's determination of an attorney's reasonable hourly rate, but rather, when it dismisses that court's determination as irrelevant."). Here, the district court adequately considered the past fee awards as part of its determination of Rossiello's market rate and properly recognized the vast range of rates awarded. Similarly,

the third party affidavits assert that Rossiello's requested rate is reasonable, but we have previously criticized third party affidavits that merely opine on Rossiello's market rate. *See Batt*, 241 F.3d at 895. We have indicated a preference for affidavits that actually provide evidence as to what the comparable attorneys charge for similar services. *See id.* The affidavits here do provide some support for a rate in the range requested by Rossiello but also provide support for a lower rate. The district court further acted within its discretion in discounting the probative value of the few hourly billing contracts presented since Rossiello did not submit proof that his clients had paid these amounts.

We do note that, in contrast to the substantial evidence presented by plaintiff, defendant offered hardly any evidence in support of a lower hourly rate. Defendant's evidence consists only of citations to previous cases in which the court reduced Rossiello's hourly rate, as well as a comment from defendant's counsel that he charged his client less than $250 per hour for his work in this case. Had defendant submitted no evidence, the district court would have had to award fees at Rossiello's proposed rate. *See People Who Care*, 90 F.3d at 1313. Yet we have recognized that "if a fee applicant can establish that his requested hourly rate is the 'market rate' by reference to his prior fee awards, then we see no reason why a defendant cannot point to that attorney's past fee awards to suggest that a lower hourly rate should be awarded."

*Spegon*, 175 F.3d at 556.[7] Thus, defendant's sparse evidence does satisfy its burden.

There are, however, two evidentiary determinations that we conclude exceeded the scope of the district court's discretion. First, as noted in the previous section, the fact that the affidavits came from attorneys who do not receive contingent fees does not lessen their persuasive value. Plaintiff is not able to submit the best type of evidence—evidence of Rossiello's own billing rate—because Rossiello does not typically bill by the hour. But plaintiff did produce what we have labeled the "next best evidence," *see Spegon*, 175 F.3d at 555-56, and thus the court should not have disregarded the rates attested to in the affidavits on the ground that the attorneys do not earn contingent fees. Second, the district court erred to the extent that it reduced the hourly rate based on plaintiff's failure to introduce evidence of fee awards in contested cases that approach the rate requested here. We have expressly stated that "[n]othing in the case law requires that a party show that the hourly rate they have requested has previously been disputed

---

[7] Additionally, we reject plaintiff's contention that defendant previously agreed to the rate of $595. As proof of this claim, plaintiff includes in the appendix an excerpt of defendant's December 22, 2008 response to plaintiff's fee petition, on which defendant used $595 to calculate the fee award. But plaintiff left out of the appendix the three preceding pages, on which defendant strenuously contested this rate. This misrepresentation of the record is troubling, and we remind Rossiello of his duty of candor to the court.

and upheld, however. Indeed, a previous attorneys' fee award is useful for establishing a reasonable market rate for similar work whether it is disputed or not." *Jeffboat, LLC, v. Dir., Office of Workers' Comp. Progams*, 553 F.3d 487, 491 (7th Cir. 2009).

We are unable to determine what role the impermissible considerations played in the district court's reduction of Rossiello's hourly rate. Therefore, we remand to give the district court an opportunity to reevaluate the evidence consistent with our conclusions.

### 3.   Reliance on the Consumer Price Index and the Laffey Matrix

The district court cited several reasons for its reluctance to approve the hourly rate sought by Rossiello, including the lower rates that resulted from the district court's sua sponte use of the Consumer Price Index and the Laffey Matrix. We do not question that these two measures can assist the district court with the challenging task of determining a reasonable hourly rate. But even though the district court has the discretion to rely on these measures, the district court should have given the parties the opportunity to debate the strengths and weaknesses of applying these measures in this particular case.

Federal Rule of Evidence 201(c)(1) authorizes a court to take judicial notice without a request from a party. However subsection (e) of Rule 201 emphasizes that a party "is still entitled to be heard" when a court takes judicial notice before notifying a party. Underlying this

rule is the notion that "[b]asic considerations of procedural fairness demand an opportunity to be heard on the propriety of taking judicial notice and the tenor of the matter noticed." FED. R. EVID. 201(e) advisory committee's note. Thus, Rule 201 contains a procedural requirement—"namely, that the parties be given notice and an opportunity to object to the taking of judicial notice." *United States v. Hoyts Cinemas Corp.*, 380 F.3d 558, 570 (1st Cir. 2004). We have recognized the authority of a court to take judicial notice of government websites. *See Denius*, 330 F.3d at 926; *see also Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 931 n.2 (S.D. Ill. 2006). However, given that the Internet contains an unlimited supply of information with varying degrees of reliability, permanence, and accessibility, it is especially important for parties to have the opportunity to be heard prior to the taking of judicial notice of websites.[8]

### a. Consumer Price Index

The district court used the CPI to determine Rossiello's reasonable hourly rate by starting with the $350 rate that we approved for Rossiello in 2001, *see Batt*, 241 F.3d at

---

[8] As an alternative to taking judicial notice of the Laffey Matrix and the CPI, the district court could have requested additional evidence from the parties. *See People Who Care*, 90 F.3d at 1315 ("[I]f the court believes that additional evidence is necessary for it to achieve rate determinations that are supported by the record, then further evidentiary submissions should be required of the parties.").

895. The court then took judicial notice that the CPI increase since 2001 is less than 30% and remarked that "[t]he increase in Mr. Rossiello's claimed hourly rate from $350 to almost $600 runs well in excess of that." The district court cited to two government websites about the CPI but provided no further explanation.

Although we have never addressed whether a court may take judicial notice of the CPI, we now hold that the CPI belongs to the category of public records of which a court may take judicial notice. *See Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008) (judicial notice of publicly reported stock prices); *Indianapolis Water Co. v. McCart*, 89 F.2d 522, 526-27 (7th Cir. 1937) (judicial notice of an upward trend in prices); *see also Cal. Marine Cleaning, Inc. v. United States*, 43 Fed. Cl. 724, 734 (Fed. Cl. 1999) (judicial notice of the CPI).

The district court's opinion does not identify what years it used for the calculation or what CPI-adjustment it found, leaving us unable to determine exactly what the court found Rossiello's CPI-adjusted hourly rate to be. Attempting to speculate with regard to the district court's approach, we arrive at a CPI increase of 26.2%, which produces a 2011 hourly rate of $441.70 for Rossiello.[9] Thus, reliance on the CPI appears to yield a

---

[9] We selected 2001 (the year in which *Batt* was decided) and March 2011 (the month and year in which the district court's opinion was decided) as the guideposts for the calculation. *See* Bureau of Labor Statistics, *How to Use the Consumer Price Index for*

(continued...)

higher rate than the rate ultimately approved by the district court.

If the district court had given plaintiff notice that it intended to rely on the CPI and an opportunity to respond, plaintiff might have argued for the use of different years as guideposts or for the use of a different award as the starting point. The district court's reliance on an hourly rate that we previously approved for Rossiello is logical, but our approval of a rate does not make that rate inherently more reasonable than other rates obtained by Rossiello. Aside from the $350 rate that we approved in *Batt* in 2001, Rossiello had been awarded rates of $350 and $375 two years earlier. The district court referred to these rates as "much more modest" but still selected an even lower award as the basis for the CPI adjustment. Since we have stated that "a previous attorneys' fee award is useful for establishing a reasonable market rate for similar work whether it is disputed or not," *Jeffboat, LLC*, 553 F.3d at 491, plaintiff might have persuasively argued for the use of a different award in the CPI calculation. Further, plaintiff might have argued that the court should increase Rossiello's rate by more than the CPI-increase due to the fact that Rossiello's market value increased by more than the amount of inflation as he acquired additional experience and successful outcomes over the past decade.

We therefore hold that the district court abused its discretion by relying sua sponte on a CPI-adjusted rate.

---

[9] (...continued)
*Escalation*, http://www.bls.gov/cpi/cpi1998d.htm.

This approach deprived plaintiff of an opportunity to contest the application of the CPI or to argue for a particular manner of applying it to the present case.

### b. Laffey Matrix

The district court also relied on the Laffey Matrix, even though it too had not been referenced by either party. The Laffey Matrix is a chart of hourly rates for attorneys and paralegals in the Washington, D.C. area that was prepared by the United States Attorney's Office for the District of Columbia to be used in fee-shifting cases. *See Warfield v. City of Chicago*, 733 F. Supp. 2d 950, 960 n.11 (N.D. Ill. 2010); Dep't of Justice, *Laffey Matrix–2003-2012*, http://www.justice.gov/usao/dc/divisions/civil_Laffey_Matrix_2003-2012.pdf. The district court did not explicitly take judicial notice of the Matrix, though it could have as a document in the public domain. The district court stated that the Matrix suggests an hourly rate "no greater than $475" for an attorney with Rossiello's experience in the years 2010–2011. The Matrix in fact indicates a rate of exactly $475 for attorneys with Rossiello's experience, but the court may have adjusted this figure downward based on its reliance on a district court case that noted lower billing rates in Chicago than in the D.C. market.

In the twenty years since the creation of the Laffey Matrix, we have never addressed this measure. No circuit outside the D.C. Circuit has formally adopted the Laffey Matrix, and few have even commented on

it. While some circuits have applied the Laffey Matrix, *see, e.g., Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 708-10 (3d Cir. 2004), other circuits have expressed concerns about the Matrix's utility outside its circuit of origin, *see, e.g., Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("[J]ust because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere . . . ."); *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009).

District courts in this Circuit have occasionally considered the Laffey Matrix when considering the reasonableness of hourly rates for fee awards. *See Hadnott v. City of Chicago*, No. 07 C 6754, 2010 WL 1499473, at *6 (N.D. Ill. Apr. 12, 2010) (noting that "numerous judges in this district" have considered the Laffey Matrix as one factor). The district courts that have considered the Laffey Matrix have viewed it with differing levels of praise and skepticism. *Compare Perry v. City of Gary, Ind.*, No. 2:08-CV-280 JVB, 2011 WL 3444007, at *3 (N.D. Ind. Aug. 8, 2011) (finding the Matrix to be "unpersuasive"), *and Thompson v. City of Chicago*, No. 07 C 1130, 2011 WL 2923694, at *4 (N.D. Ill. July 18, 2011) ("afford[ing] little weight" to the Matrix), *with Berg v. Culhane*, No. 9 C 5803, 2011 WL 589631, at *3 (N.D. Ill. Feb. 10, 2011) (finding the Matrix to constitute "satisfactory evidence"). A recent decision highlighted these divergent opinions and then rejected the assertion that the Laffey Matrix is a "well-established neutral source" that has been widely accepted by federal courts. *Soleau v. Ill. Dep't of Transp.*,

No. 09 C 3582, 2011 WL 2415008, at *4 (N.D. Ill. June 11, 2011). The court in *Soleau* acknowledged that the "Laffey Matrix may be one factor in a rate inquiry" but saw "no reason to disregard the longstanding rule that looks first to the attorney's actual rates, then to the rates charged by comparable attorneys in the same geographic area." *Id.*

We have not come across any other opinion from the Northern District of Illinois in which the court relied on the Laffey Matrix when it was not raised by a party. The Laffey Matrix is not without its critics, and plaintiff should have had the opportunity to contest its value in general and as applied to him. Even the D.C. Circuit has referred to the Matrix as "crude" and has recommended that plaintiffs provide affidavits, surveys, and past fee awards to enable the district court to refine the Matrix for the particular attorney. *See Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995). Additionally, plaintiff might have chosen to contest whether the district court should depart upward or downward from the rates on the Matrix. In this case, the district court relied on *Elusta v. City of Chicago*, 760 F. Supp. 2d 792, 798 (N.D. Ill. 2010), for the conclusion that the Matrix rates, based on the D.C. market, should be adjusted downward for the lower cost of living in Chicago. But the *Elusta* court provided only minimal support for this assertion, merely comparing the Matrix rates to the rates in cases submitted by plaintiff and ultimately declining to use the Laffey Matrix. *Id.* Moreover, another decision in the district suggested that the high cost of living in Chicago necessitates

an upward adjustment to the Matrix. *See Schultz v. City of Burbank*, No. 06 C 5646, 2007 WL 1099479, at *2 (N.D. Ill. Apr. 10, 2007).

Here, plaintiff presented substantial evidence to support the requested fee award. If the district court found this evidence to be unpersuasive and therefore intended to rely on an independent basis for the hourly rate, then the district court should have given the parties an opportunity to respond. The parties had no notice that they should address the CPI or the Laffey Matrix in their briefing, and the case law within this Circuit would not have put them on constructive notice. Even when relying on these "objective" measures, the district court still exercised discretion in determining how to apply them, ultimately arriving a rate lower than those proposed by the CPI and the Laffey Matrix. The district court did not err simply by using the CPI and the Laffey Matrix to determine a reasonable hourly rate, but we hold that the court did err by relying on these measures without giving plaintiff an opportunity to respond. We instruct the district court, on remand, to give the parties an opportunity to comment on whether and how these two measures should be used to determine Rossiello's reasonable hourly rate.

### 4.  Clear and Concise Explanation for Hourly Rate

The district court must "provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437; *see also Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001). The Supreme

Court has recently defined this obligation as requiring a judge to "provide a reasonably specific explanation for all aspects of a fee determination." *Perdue*, 130 S. Ct. at 1676. In the absence of such explanation, "adequate appellate review is not feasible, and without such review, widely disparate awards may be made, and awards may be influenced (or at least, may appear to be influenced) by a judge's subjective opinion regarding particular attorneys or the importance of the case." *Id.* The explanation need not be lengthy—we have affirmed brief explanations that sufficiently describe the district court's approach to calculating the fee award and dispel any notion of "an unfounded, arbitrary reduction based on the court's subjective view of what might be excessive." *Strange v. Monogram Credit Card Bank of Ga.*, 129 F.3d 943, 946 (7th Cir. 1997); *see also Small*, 264 F.3d at 709. But however concise the explanation is, it must still be a "rendering of reasons in support of a judgment—rather than a mere conclusory statement." *Sottoriva*, 617 F.3d at 976.

The district court's opinion leaves us uncertain as to how it arrived at $400 as the reasonable hourly rate for Rossiello. The district court acknowledged that the affidavits and settlement agreements "arguably support" the hourly rate requested. The district court referenced the Laffey Index and the CPI adjustment as yielding rates lower than Rossiello's proposed rate, but both approaches still yield an hourly rate above $400. In fact, the district court's only reference to a rate lower than $400 was its comment that defendant's counsel "reports" charging defendant less than $250 per hour for his services.

To conclude its discussion of hourly rate, the district court stated that "an hourly rate of $400 will amply compensate Mr. Rossiello for his successful efforts." This language suggests that the district court may have made a subjective determination as to the "just" price for Rossiello's work, instead of making an objective determination—supported by the evidence—as to the reasonable rate for Rossiello. *See Pressley v. Haeger*, 977 F.2d 295, 299 (7th Cir. 1992) ("Prevailing plaintiffs are entitled not to a 'just' or 'fair' price for legal services, but to the *market* price for legal services.").

We do not require district courts to give extensive explanations, but a clear and concise explanation is needed so that we can determine whether the district court considered the evidence and how it arrived at its ultimate award. Although the district court's opinion sufficiently describes its assessment of the evidence presented, the opinion does not sufficiently explain its reasons for selecting $400 as the hourly rate. In the absence of this explanation, we are unable to determine whether the district court's conclusion rests on a sound analysis. When the district court revisits this issue on remand, we urge the court to provide a meaningful explanation of its basis for the reasonable hourly rate.

We do not pass judgment on whether $400 is a reasonable hourly rate for Rossiello. We hold only that the district court may not reduce the claimed hourly rate due to the presence of a contingent fee agreement, that the court may not disregard evidence of uncontested fee awards, that the court must provide plaintiff with an adequate

opportunity to respond if it decides to rely on independent evidence, and that the court must sufficiently explain its fee determination with a clear and concise statement.

## C. Refusal to Conduct an Evidentiary Hearing Regarding Fees

We review the district court's denial of a motion for an evidentiary hearing on attorneys' fees for abuse of discretion. *See Small*, 264 F.3d at 706, 709; *Jancik v. Dep't of Hous. & Urban Dev.*, 44 F.3d 553 (7th Cir. 1995). A district court does not abuse its discretion by denying evidentiary hearings that would only address arguments and materials already presented to the court in the parties' briefings. *See Small*, 264 F.3d at 709; *see also Sablan v. Dep't of Fin. of N. M. Is.*, 856 F.2d 1317, 1322 (9th Cir. 1988) ("Fee awards . . . need not be preceded by an evidentiary hearing if the record and supporting affidavits are sufficiently detailed to provide an adequate basis for calculating an award, *and* if the material facts necessary to calculate the award are not genuinely in dispute" (citations omitted)). We recognize the need to balance a plaintiff's interest in being heard with the court's interests in efficiency and administrative ease. *See Spellan*, 59 F.3d at 647.

However, we have held that a district court must afford plaintiffs an opportunity to respond when the court raises concerns about the fee petition that are based upon its independent scrutiny of the record or when the court establishes reasons sua sponte for reducing the fee award. *See Jaffee*, 142 F.3d at 416 n.2 ("[W]hen a court raises

independent concerns about a fee petition, we have recognized that the court should afford the plaintiffs an opportunity to address its concerns."); *Spellan*, 59 F.3d at 646; *cf. Small*, 264 F.3d at 709 (concluding that the district court did not err in declining to hold an evidentiary hearing because "[n]othing in the court's order suggests that the court devised additional reasons sua sponte to reduce the fee award without giving plaintiffs an opportunity to respond").

In this case, plaintiff filed three separate motions to request an evidentiary hearing on the fee petition. The district court explained that it does not ordinarily hold hearings to determine attorneys' fees but would hold one if needed. Although no hearing was held, the district court based its significant fee reduction on several rationales that plaintiff did not have the opportunity to respond to: (1) the hourly rate reduction due to the presence of the contingent fee agreement; (2) the application of the Laffey Matrix, which has not been adopted by the Seventh Circuit or the Northern District of Illinois, and which was not proffered by either party; and (3) the post-opinion decision to reverse the award of fees to outside counsel because they were not prepaid. Although plaintiff had the opportunity to support the requested fee award through briefs and exhibits, plaintiff was deprived of the opportunity to respond to the reasons that the district court ultimately relied on when reducing the fee award. We therefore conclude that the district court abused its discretion when it declined to hold an evidentiary hearing or to otherwise provide the parties with an opportunity to respond to the sua sponte reasoning used by the district court.

### D. Denial of Fees to Outside Counsel Because They Were Not Prepaid

Finally, plaintiff argues that the district court erred when it reversed its award of fees to Abrahamson because Rossiello had not prepaid these fees. Because there is no requirement that Rossiello or Pickett have prepaid the fees incurred for pursuing fees, we direct the district court to reinstate its previous award.

In its March 29, 2011 opinion, the district court eliminated as duplicative 10 hours of time that Rossiello had spent but approved the 13.75 hours spent by Abrahamson's firm on the fee petition. The district court did not analyze the reasonableness of the hourly rates sought by Abrahamson's firm except to note that "retained counsel assigned the bulk of the work to an associate at a lower billable rate" and that "Ms. Abrahamson's claimed hourly rate is a market rate, and the court presumes that Mr. Rossiello has paid it." Despite its approval of both the hours spent and the rate requested, the district court ordered Rossiello to "demonstrate that he had paid Ms. Abrahamson at her billed rate."

Rossiello had not prepaid Abrahamson's fees, however, and he was thus unable to comply with the district court's order. But the parties did respond with a joint certification, agreeing that defendant would issue and deliver a check in the amount of $9,268.97 to Abrahamson's firm. Notwithstanding this apparent agreement, the district court reversed its position and denied the fees and costs to Abrahamson's firm, stating:

> [Plaintiff's counsel] has declined, however, to demonstrate that he has paid Ms. Abrahamson. As the court noted in its opinion, Ms. Abrahamson claimed a substantial rate as her market rate. Plaintiff's counsel asserted that Ms. Abrahamson's fees were payable, at the hourly rate she claimed, regardless of the court's ruling on the fee petition. Accordingly, the court presumed that she had been paid and expected counsel to confirm this, in order to eliminate any suspicion that Ms. Abrahamson would collect her substantial rate only if the court were to approve recovery from Defendant.

> No such confirmation has been provided. . . . The court concludes that Mr. Rossiello has not in fact paid Ms. Abrahamson. The court declines therefore to award the requested fees for her services.

We find district court's sudden reversal to be concerning for several reasons, and we are unable to conclude that the district court acted properly by denying these fees.

First, we note that, contrary to the district court's later statement, the district court had not referred to Abrahamson's rate as "substantial" in its earlier opinion. The opinion had only referred to Abrahamson's claimed rate as "market rate." In fact, the court seemed to praise Abrahamson for assigning most of the work to an associate at a lower hourly rate.

Second, the denial of the fee award does not appear to be grounded in a conclusion that Abrahamson's hourly rate is unreasonable. Such a conclusion might have been proper, given our recognition that the "best evidence of

whether attorney's fees are reasonable is whether a party has paid them." *Cintas Corp. v. Perry*, 517 F.3d 459, 469-70 (7th Cir. 2008). Thus, the district court theoretically could have relied on the absence of advance payment to support a determination that Abrahamson's fees are unreasonable—but the district court never expressed or even hinted at this rationale. Both parties had viewed the issue of Abrahamson's fees as resolved by the language in the district court's opinion that had expressed approval of those fees. If the district court's subsequent order signifies a reversal of its view of the reasonableness of Abrahamson's requested hours or rate, the district court should have explained its reasoning and given plaintiff an opportunity to respond. Without this explanation, plaintiff is unable to effectively contest this decision, and we are similarly unable to review whether the court acted within its broad discretion.

Third, we note that the court does not cite to any legal support, nor have we found any, that requires a party in a fee-shifting case to have prepaid the fees incurred by an outside firm as a precondition for recovery. This approach threatens the objectives underlying the fee award. We have explained that "[f]ee-shifting statutes in civil rights legislation are intended to allow litigants access to attorneys who would otherwise be inaccessible." *Mathur*, 317 F.3d at 743. There is no question that a prevailing plaintiff's entitlement to fees "extends to the fee he reasonably incurs in defending the award of that fee. Otherwise the fee will undercompensate." *Gorenstein Enters. v. Quality Care-USA, Inc.*, 874 F.2d 431, 438 (7th Cir. 1989) (citation omitted). Pickett is the one entitled to

the attorneys' fees, not Rossiello or Abrahamson. *See Venegas*, 495 U.S. at 88. The district court's decision to reverse the fee award on the sole ground that plaintiff did not pay these fees in advance runs counter to the policy of 42 U.S.C. § 2000e-(k) and appears unsupported by case law.

Fourth, we are puzzled by the district court's explanation that the prepaid requirement was necessary to "to eliminate any suspicion that Ms. Abrahamson would collect her substantial rate only if the court were to approve recovery from Defendant." The district court's concern is not misplaced, but it does not justify imposing a requirement that is not grounded in law and reversing its award without any opportunity to respond. We see nothing in the record, moreover, that would suggest that outside counsel ran up costs or otherwise took excessive risks, on the assumption that someone else was sure to pay the bill (i.e., there is no indication of moral hazard).

We are mindful of the fact that "[o]nly in extraordinary circumstances will we disturb a district judge's exercise of his discretion in awarding or denying fees for establishing fees." *Muscare v. Quinn*, 680 F.2d 42, 45 (7th Cir. 1982). Nevertheless, the district court's reversal, without legal support and without an opportunity for the parties to respond, requires us to vacate the district court's April 21, 2011 order denying attorneys' fees to Abrahamson and to remand with instructions to reinstate its original award of $9,268.97.

### III. Conclusion

Although we conclude that the district court abused its discretion in certain aspects of its fee determination, we do not intend to signal a retreat from the significant deference that we accord to a district court's fee award, and we remain of the view that a fee petition "should not result in a second major litigation," *Hensley*, 461 U.S. at 437.

For the foregoing reasons, we VACATE the award of attorneys' fees for Rossiello's services, and we REMAND for further proceedings consistent with this opinion. Further, we direct the court to REINSTATE the award of attorneys' fees for Abrahamson's firm.