In the

# United States Court of Appeals
### For the Seventh Circuit

No. 11-1424

RICHARD G. MARR,

*Plaintiff-Appellant*,

*v.*

BANK OF AMERICA, N.A.,

*Defendant, Third-Party Plaintiff-Appellee,*

*v.*

SUMMIT TITLE SERVICES, LLC,

*Third-Party Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 09-CV-228—**J.P. Stadtmueller**, *Judge.*

ARGUED SEPTEMBER 14, 2011—DECIDED DECEMBER 6, 2011

Before WOOD, TINDER, and HAMILTON, *Circuit Judges.*

WOOD, *Circuit Judge.* In the world of the Truth-in-Lending Act (TILA), 15 U.S.C. §§ 1601 *et seq.,* it often

seems that no detail is too insignificant to matter. We have called TILA "hypertechnical" in the past, see, *e.g., Brown v. Payday Check Advance, Inc.,* 202 F.3d 987, 989 (7th Cir. 2000), and this case provides yet another opportunity to see this level of precision in operation. The case before us involves a borrower who alleges that he did not receive all of the documents to which he was entitled when he refinanced his mortgage. If he is correct, then he had not a measly three days, but a more generous three years in which to rescind the transaction. The district court ruled for the bank, but we conclude that the borrower presented enough evidence to defeat summary judgment, and so we reverse and remand for further proceedings.

# I

One provision of TILA requires the creditor to provide the consumer with "clear[] and conspicuous[]" notice of his right to rescind this type of loan within three business days following the transaction. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(1). Regulation Z, issued by the Federal Reserve Board to implement TILA, elaborates on this rule by requiring the lender to give the consumer *two* copies of the notice of his three-day right to cancel at closing. (The parties refer to this document as the NORTC, but in the interest of keeping the English language alive, we refer to it here as simply the Notice; no other notice is at issue in Marr's case.) 12 C.F.R. § 226.23(b)(1). If the lender fails to comply with this rule, as we have said, the time to rescind is extended from

three days to three years. 12 C.F.R. § 226.23(a)(3). This case turns on whether the plaintiff, Richard G. Marr, received the obligatory two copies of his Notice, or if he received just one; the answer to that question dictates whether his effort to rescind a loan was timely.

In 2007, Marr decided to refinance his mortgage with Countrywide Bank, the predecessor in interest to defendant Bank of America, N.A. (For simplicity, we refer to the bank by the name it had at the time of Marr's transaction.) Marr's story is depressingly familiar in the wake of the 2007 financial crisis. Marr, now a retired auto mechanic, purchased a home in Wauwatosa, Wisconsin, in 1973, using funds secured by a mortgage. He has refinanced that loan several times since then to help pay the bills. In early 2007, a mortgage broker called Alpine Financial contacted Marr about refinancing his mortgage. Marr decided that this was a good idea, and so he applied in February 2007 for a new loan to help with his credit card bills. Countrywide accepted Marr's application. Summit Title, the title insurance company that provided closing services for Countrywide, closed the loan with Marr on February 23, 2007.

The focus of this litigation is on what exactly happened at that closing. Marr testified that the closing agent put a duplicate of every document he signed in a pile next to him, but he did not have time to review them. One of those documents, which Marr signed, was an acknowledgment that he had been given the required two copies of the Notice. At the end of the closing, Summit's agent gave Marr a folder in which to put the documents. The

agent stuffed everything into the folder, and then Marr left. When he returned home, Marr put the folder in a filing cabinet in his dining room where he keeps all of his important documents. As he put it, "I live by myself, so there's [*sic*] no children or anything there that would mess with [the filing cabinet] . . . and that's where it stayed." He maintained that he did not disturb the folder until two years later when his attorney inspected it in connection with an unrelated lawsuit. Only then, Marr testified, did they "discover[] that there was only one copy of that right to cancel in there." During the deposition, Marr admitted that there were a few documents inside his loan folder that post-dated the February 23 closing. When asked why his loan folder had been disturbed, Marr stated, "I don't know. That may have been when I refinanced again and I dropped those in the envelope thinking that that was the envelope for . . . the August [refinancing]." He was certain, however, that none of the February 23 loan documents had been removed, even if other documents were later added.

Debora Ann Smith, a Summit closing agent, submitted an affidavit stating that she was Marr's closing agent. She did not discuss the specific events that took place at Marr's closing, but she provided information on Summit's closing practices and procedures. Summit required its closing agents to review closing instructions and checklists with the borrower; to discuss all closing documents with the borrower to confirm the borrower's understanding of them; to present and review the Notice with the borrower at the end of the closing to ensure the

borrower's understanding of his rights; and to put at least two copies of the Notice in the borrower's document pile. Smith was confident that she must have given Marr two copies of the Notice, because she could not recall a time when she did not follow these practices.

Marr submitted an affidavit in response to Smith's statement. He asserted that his closing did not follow the standard practices and procedures outlined by Smith in her affidavit. Instead, he said, "the closing agent did not review anything at the end of the closing." She "did not look through my documents, her documents, or anything else between the time when I finished signing the closing documents and when I left Summit Title's office." He also stated that Smith did not present the Notice at the end of the closing; rather, she presented it "somewhere near the beginning or in the middle of the closing."

Based on this record, the district court concluded that Countryside and Summit were entitled to summary judgment. Marr's signed acknowledgment that he had received *two* copies of the Notice created a rebuttable presumption that this was true. See 15 U.S.C. § 1635(c). The court believed that Marr's testimony that he received only one copy, which he placed in the envelope furnished by Summit, and that he never withdrew anything from that envelope (even if he might have added an item or two) was not enough to rebut that presumption. Marr challenges those conclusions on appeal.

**II**

The standard of review from a grant of summary judgment is well known, but it is worth emphasizing that the non-moving party does not bear the burden of *proving* his case; the opponent of summary judgment need only point to evidence that can be put in an admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor. Our role, applying what is usually called *de novo* review, is to see if the opponent has identified such evidence in the record; in so doing, we draw all reasonable inferences and view all facts in favor of the non-moving party. *Sutherland v. Wal-Mart Stores, Inc.*, 632 F.3d 990, 993 (7th Cir. 2011). The question in this case is whether Marr's testimony and affidavit is sufficient to allow a reasonable jury to find that Marr received only one copy of the Notice.

TILA was intended to ensure that consumers are given "meaningful disclosure of credit terms" and to protect consumers from unfair credit practices. 15 U.S.C. § 1601(a). Regulation Z enforces these goals in a variety of ways, notably for this case by requiring lenders to give consumers two copies of the Notice at closing. 12 C.F.R. § 226.23(b)(1). If Marr can show that he did not receive two copies, his effort to rescind the loan has been brought in time, and he may be entitled to that relief.

Rescission is far from a cure-all in most mortgage refinance situations: it is "a process in which the creditor terminates its security interest and returns any payments made by the debtor in exchange for the debtor's return of all funds or property received from

the creditor." *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 573 (7th Cir. 2008); see also 15 U.S.C. § 1635(b). The rescinding borrower must return the loan principal; this requirement often has the practical effect of ruling out rescission, if the borrower has already used the money to cover urgent financial obligations. Marr, however, appears to be an exception. His attorney represented at oral argument that Marr has paid off the loan in full and is presently seeking reimbursement of his interest payments, statutory damages for failure to rescind, and attorney's fees. The bank informed us that the interest payments amount to approximately $17,000.

To succeed in this case, Marr must overcome the fact that he signed a form at closing acknowledging that he received two copies of the Notice. (No one has argued that the remedy for receiving only one copy is different from the remedy for failing to give any copies of the Notice, and so we do not need to consider that possibility.) As we consider this issue, it is helpful to recall the precise weight that the statute gives to the written acknowledgment:

> Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

15 U.S.C. § 1635(c). This phrasing strongly suggests that Congress was warning courts not to overrate the importance of the acknowledgment; that is why it cautions

that the statement "does no more than" create the rebuttable presumption of delivery.

Although both parties have spent a great deal of time in their briefs talking about "bursting bubble" presumptions, the legislative history of Federal Rule of Evidence 301, and the debate between Thayer and Morgan about what is left of a presumption after the bubble bursts, we do not need to take those detours. Although TILA and Regulation Z do not specify the quality or quantity of evidence needed to overcome the presumption, Rule 301 provides the default rule, and it states:

> In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally.

FED. R. EVID. 301. Here, to overcome the presumption created by his written acknowledgment and thus to raise a genuine fact that would make summary judgment inappropriate, Marr needed to produce enough evidence to permit a reasonable jury to find that he did not receive two copies. The Third Circuit recently addressed this very situation, speaking of notices of right to rescind loans. In *Cappuccio v. Prime Capital Funding LLC*, 649 F.3d 180, 189 (3d Cir. 2011), it described the borrower's burden as "minimal, given that the presumption's only effect is to require the party contesting it to produce enough evidence substantiating the presumed fact's absence to withstand a motion for summary judg-

ment or judgment as a matter of law on the issue." (Internal quotations omitted.)

The district court focused on two pieces of evidence provided by Marr: (1) his testimony that his attorney found only one copy of the Notice in the folder in which the closing agent put Marr's copies of the closing documents, and (2) his allegation that the contents of the folder remained undisturbed—at least in the sense that nothing was removed—since the February 23 closing. The court did not incorporate in its analysis Marr's affidavit statement that his closing experience deviated from Summit's standard practices.

The court gave several reasons for its conclusion that Marr's showing fell short of what was needed:

> Even when viewed in a light most favorable to plaintiff, plaintiff's testimony as a whole actually suggests that he is unable to identify with any certainty which documents and how many of those documents he received at closing, rather than that he received only one notice.

The court was concerned that Marr did not note, read, or review the number of copies he was given during the closing. It deemed it "immaterial whether Marr was rushed through the closing" and thus unable to determine the number of copies he received. The court was also unpersuaded by Marr's argument that the full set of documents he had received from Summit had been preserved in the Redweld folder. It called this the "envelope theory" and rejected it, largely because several documents that post-dated the closing were found in

the folder. It regarded this as evidence of tampering and thus inconsistent with Marr's testimony that the closing documents had remained undisturbed. It concluded that "[a]t best, this contradictory testimony, as well as the fact that the folder did not remain untouched, suggests that Marr cannot state with any certainty whether or not he removed any documents from the folder during the two years before the closing and the meeting with his attorney."

Both the court and the bank were understandably worried about the possibility that the presumption of delivery could be rebutted by nothing more than the borrower's say-so; if rebuttal were that easy, they say, section 1635(c) might as well not be in the statute. We need not take a position on that extreme case, although we note again that TILA is a remedial statute and it appears that the Third Circuit has decided that it indeed goes that far. *Cappuccio*, 649 F.3d at 190 ("[W]e hold that the testimony of a borrower alone is sufficient to overcome TILA's presumption of receipt."). As we have held in other contexts, "uncorroborated, self-serving testimony, if based on personal knowledge or firsthand experience, may prevent summary judgment against the non-moving party, as such testimony can be evidence of disputed material facts." *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) (internal quotation marks omitted). We also do not need to determine whether Marr's evidence that the envelope remained undisturbed (the so-called envelope theory) standing alone is sufficient, because Marr presented more than that. Marr stated in his affidavit that his ex-

perience at the February 23 closing deviated from the standard practices and procedures that Smith described in her affidavit. Taken as a whole, Marr's evidence is enough to permit a reasonable jury to find in his favor.

Marr left the closing agent's office on February 23 with the loan documents in the folder that the title company had given him. He put that folder into his filing cabinet. He added additional loan documents to the folder later on, but he never removed anything from the folder. When he took the folder to his attorney's office, he and the attorney discovered that there was only one copy of the Notice. If believed, this evidence is enough to rebut the presumption created by Marr's acknowledgment that he received two copies of the Notice. We note, finally, that although the difference between one and two copies may seem to be an empty formality, Regulation Z demands two copies. This is not a situation in which there is any room for some kind of substantial compliance rule. Two copies means two copies, not one. See 12 C.F.R. § 226.23(b)(1). Marr is entitled to the opportunity to convince the trier of fact that he did not receive all that the Regulation promised him, and thus that he may proceed with his suit to rescind the loan. We REVERSE and REMAND for further proceedings consistent with this opinion.