In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-1382

WILSON IROANYAH AND JOY IROANYAH,

*Plaintiffs-Appellants*,

*v.*

BANK OF AMERICA, ET AL.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
No. 1:09-cv-00094 — **Gary S. Feinerman**, *Judge*.

ARGUED DECEMBER 12, 2013 — DECIDED MAY 28, 2014

Before BAUER, CUDAHY, and POSNER, *Circuit Judges*.

CUDAHY, *Circuit Judge*. This case concerns rescission procedures and the calculation of attorneys' fees under the Truth in Lending Act (TILA). On November 16, 2006, appellant Wilson Iroanyah closed on two separately documented loans. Appellee Taylor Bean & Whitaker Mortgage Corporation (TBW) loaned Wilson $192,000 (first loan) and $36,000 (second loan). Wilson and his wife, appellant Joan Iroanyah, own a home in Streamwood, IL, which they used to secure

both loans. As is often the case in mortgage procedures, TBW assigned the loans to banks. The first loan went to Bank of New York Mellon (BNY) [1] after TBW's bankruptcy, and the second loan was assigned to Bank of America, N.A. (BOA) (collectively, the Banks). Appellee Mortgage Electronic Registration Systems, Inc. (MERS) is a nominee mortgagee for both loans, and Appellee Green Tree Servicing, LLC (Green Tree) services Wilson's Second Loan.[2]

Wilson signed and received a number of documents at closing as part of the Truth in Lending Disclosures, including at least one Notice of Right to Cancel under TILA for each loan. TILA requires two notices per loan. The Iroanyahs contend that they received only one copy of the notice while Defendants state that the Iroanyahs received two copies for each loan. The Iroanyahs signed acknowledgments for the notices stating that they received two copies of the notice for each loan.[3] The Iroanyahs also received a Truth-In-Lending

---

[1] While this decision was pending, BNY and MERS settled and were dismissed as parties to this action.

[2] Green Tree and MERS contend that because they are servicers (Green Tree) and nominees (MERS) of the loans, they are not originators or assignees of either loan and therefore cannot be liable for damages under TILA. This is correct. *See* 15 U.S.C. § 1641(f)(1) ("A servicer of a consumer obligation arising from the consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation."). Though Green Tree and MERS are not subject to liability under TILA, they remain parties in this case because of their potential obligations if rescission were to occur.

[3] The district court determined that there was not sufficient evidence to grant summary judgment either way for this possible TILA violation. Any claim for damages for such a TILA violation is barred by the appli-

Disclosure Statement for each loan that displayed the repayment schedule, including a list of the number of payments, the amount due for each payment and the date when the first and last payments were due. Neither disclosure statement included the dates on which each payment is due (except for the first and last payments), nor do they include the frequency with which payment should be made. Despite this missing information, the Iroanyahs admitted that they understood that the payments were to be made monthly for the life of the loan.

Unable to afford payments according to the terms of the loan any longer, the Iroanyahs stopped making the required payments on the second loan in April of 2008 and stopped making payments on the first loan the following month. Roughly four months later, TBW initiated foreclosure proceedings in state court, to which the Iroanyahs responded by sending a rescission notice to TBW for the first loan, citing deficient disclosure statements in violation of TILA as the basis for rescission. While TBW denied that the disclosure statements violated TILA, it agreed to rescind the loan if the Iroanyahs first tendered $169,015.30. The Iroanyahs refused this offer and sent rescission notices to TBW and BOA for the second loan, to which neither of the parties responded.

The Iroanyahs then filed a complaint alleging defects in both of the mortgage loans, seeking rescission, statutory damages and fees and costs. Specifically, the Iroanyahs asserted that the loan documents violated TILA (1) by failing

---

cable statute of limitations, and the indisputable flaws in the payment schedule provide a separate and sufficient basis for rescission. Therefore, this issue is immaterial to this appeal.

to adequately disclose the frequency of payments because they did not specifically include the word "monthly" in the payment schedule; and (2) by failing to supply the correct number of copies of the notice of right to cancel the loans. In addition to these defects with the mortgages themselves, the Iroanyahs alleged that the Defendants violated TILA by failing to properly respond to the initial demand for rescission.

At the close of discovery, all parties moved for summary judgment. The Defendants also moved in the alternative, requesting the court to set reasonable rescission procedures. All motions were granted in part and denied in part. The Iroanyahs prevailed on the question whether the disclosure statements violated TILA. This meant that their right of rescission—which would have been limited to three days in the absence of a TILA violation—extended to three years, and the action was therefore timely. However, the Iroanyahs' claim for statutory damages stemming from the disclosure violations was denied because TILA imposes a one year limitation period on that claim, which had run. The Iroanyahs also prevailed on the question whether the Defendants' failure to respond to their rescission notices itself violated TILA. This resulted in an award of statutory damages for the failure to respond and actual damages for the attorneys' fees they incurred while defending against the state court foreclosure action.

The court also determined that modifying the rescission process by requiring the Iroanyahs to tender the amounts advanced to them before the Banks released their security interests was a proper exercise of discretion under TILA. The court calculated the tender amounts by subtracting finance charges and interest and fees the Iroanyahs paid from both

loans' principal. The court also subtracted $4000 from the tender amount for the statutory damages relating to the Banks' deficient response to the Iroanyahs' rescission notice, and $2800 in costs and expenses for the Iroanyahs' defense of the foreclosure suit in state court. Thus, the tender amount for the First Loan was calculated to be $162,215.30, and $26,037.10 for the Second Loan.

The court then rejected the Iroanyahs' proposal that they be allowed to repay in installments over the life of the original loans, reasoning that this repayment plan would effectively reform the loans into zero interest loans, which would be inequitable to the Defendants. Alternatively, the Iroanyahs asked for six months to obtain financing in order to make tender, conceding that they could not currently make tender. The Defendants requested instead that the court give the Iroanyahs thirty days to tender. The court split the difference, giving the Iroanyahs ninety days to make tender. The court stated that if the Iroanyahs succeeded in obtaining financing, it would order a rescission, but if they could not find alternative financing, it would give judgment to the Defendants on the rescission claims.

The Iroanyahs then filed a petition seeking an award of $38,812 in attorneys' fees and costs against BNY and $33,849 against BOA. The Defendants challenged these amounts on the basis that a majority of the fees were incurred while arguing claims on which the Iroanyahs failed—namely, on their proposed rescission procedures and on their time-barred claims for damages. As a result, the district court awarded fees and costs in the amount of $16,433 against BNY and $13,433 against BOA.

Ultimately the Iroanyahs were unable to make tender in the timeframe the court established. Therefore, the court entered judgment for the Defendants on the rescission claims. The Iroanyahs now appeal the district court's ability to condition rescission on tender, its rejection of their proposed installment plan and imposition of the ninety day repayment term and its award of attorneys' fees.

## I.

The default procedures under TILA § 1635(b) and Regulation Z require the creditor to release its security interest and return all money paid in connection with the transaction before the borrower is required to tender full repayment. U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(4). However, courts also retain discretion to change the order of the procedure as long as the change does not interfere with the borrower's substantive right to rescind. Thus, the question here is whether the district court was within its discretion to require tender *before* the security interests were released and interest payments returned, and whether in light of the failure to tender repayment dismissal of the rescission action was appropriate. The Iroanyahs contend that TILA bars any court from conditioning rescission upon repayment. As this is a question of statutory interpretation, we review the district court's decision in this regard *de novo*. Because rescission is an equitable remedy involving mutual obligations, we affirm the district court in rejecting the Iroanyahs' interpretation of TILA.

The Iroanyahs put forth two mutually incongruous propositions to support their assertion that the district court impermissibly conditioned rescission upon repayment. In their initial briefing they emphatically state that if a consum-

er chooses to exercise the right to rescind, then under TILA and Regulation Z "the security interest and obligation to pay finance and other charges are automatically voided – period." The brief further asserts that even in light of a failure to repay the principal, a court is not permitted to refrain from voiding the security interest.

At oral argument the Iroanyahs abruptly changed direction, claiming they were not challenging the district court's refusal to void the security interest without repayment of principal (and, rather disingenuously, that they never had). Instead, they argued that despite the inability to repay, the Iroanyahs are entitled to the other key benefit of rescission— the reduction of the original loan amount by interest and fees paid. Consequently, they claim that the district court was not permitted to dismiss their rescission claim because they were automatically entitled to this benefit of rescission, even though they expressly conceded that the primary benefit of rescission—voiding the security interest—is not available without repayment. Thus, the Iroanyahs essentially argue that they deserve one aspect of TILA's rescission remedy (reduction of interest and fees) even though they concede that they are not entitled to the other aspect of TILA rescission (security interest termination) and also concede that they cannot satisfy their tender obligations. It is ultimately unimportant which of these incongruous arguments the Iroanyahs wish to stand on, since both evince a flawed conception of rescission.

The Iroanyahs rely on a flawed interpretation of TILA and its implementing regulations and commentary to conclude that they have fully unconditional right to rescission.

Their basis for this argument lies in the language of the official interpretations to Regulation Z, which state:

> The sequence of procedures under section 1026.23(d)(2) and (3), or a court's modification of those procedures under section 1026.23(d)(4), does not affect a consumer's substantive right to rescind and to have the loan amount adjusted accordingly. Where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property.

> 12 C.F.R. Pt. 1026, Supp. I, Part 2.

Based on this language, the Iroanyahs repeat over and over that the procedures, which can be modified by the district court, cannot affect the borrower's right to rescind. In other words, they contend that once a court determines rescission under TILA is available, it is fully unconditional whether or not principal is repaid.

What the Iroanyahs misunderstand is that rescission is a process involving two parties, each with their own obligations. *See, e.g.*, *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 573–74 (7th Cir. 2008); *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir. 2003) ("[R]escission under § 1635(b) is an on-going process consisting of a number of steps"). It is an *equitable* remedy that, in the absence of court intervention,

would ordinarily require the consent of both parties to accept certain obligations. *Andrews*, 545 F.3d at 573–74.[4]

Thus, the Iroanyahs' arguments fail because they ignore the role of their own tender obligations in the process of rescission. Tender is inherently part of rescission, not an occasional effect of it. *See, e.g.*, *Marr v. Bank of America, N.A.*, 662 F.3d 963, 966–67 (7th Cir. 2011); *Chevy Chase Bank*, 545 F.3d at 573–74. For this reason, we recently commented in *Marr* that rescission is often unavailable to consumers because they are unable to return unpaid principal as a result of decreased property value, poor housing market or any number of reasons. 662 F.3d at 966–67. Accordingly, we agree with our sister circuits that have held that a borrower's inability to satisfy his tender obligations may make rescission, even if based on a TILA violation, impossible. *See, e.g.*, *American Mortg. Network, Inc. v. Shelton*, 486 F.3d 815 (4th Cir. 2007); *Yamamoto*, 329 F.3d 1167; *Large v. Conseco Fin. Serv. Co.*, 292 F.3d 49, 52 (1st Cir. 2002); *FDIC v. Hughes*, 938 F.2d 889 (8th Cir. 1991). Ultimately, rescission is fundamentally meant to unwind the entire transaction, not merely change the amount of the loan.

---

[4] TILA does create a right of rescission, which serves to increase a borrower's bargaining power by giving the borrower the ability to unilaterally initiate rescission under certain circumstances. Assuming those circumstances are met, TILA enables a borrower to succeed in accomplishing on her own what she would ordinarily need a court order or consent to accomplish—that is the "substantive right" that TILA creates. *See* 12 C.F.R. § 226.23(d)(4). This does not, however, mean that rescission under TILA is not an equitable remedy, as the Iroanyahs suggest. TILA does not give borrowers the right to rescind their own obligations without also making the lenders whole through tender, and TILA places the specific terms under which parties will fulfill those obligations within the trial court's discretion.

*See, e.g., Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 765–66 (7th Cir. 2006). If the Defendants' security interest remains intact and the loan continues to exist *or* if repayment is impossible, then rescission, by *any* definition, has not taken place and there is no benefit to claim.

## II.

The Iroanyahs also challenge the district court's rejection of their 26-year, interest-free installment plan. We review the district court's rejection of the Iroanyahs' proposed installment plan and its imposition of a ninety day repayment period for abuse of discretion. *See Yamamoto*, 329 F.3d at 1173.

In mounting their challenge to the ninety day period imposed by the district court, the Iroanyahs misinterpret the district court order. They argue that the court erroneously believed that TILA generally does not permit tender installment plans, and that the district court's decision was infected by that misunderstanding. Thus, the Iroanyahs cited cases only support the unchallenged position that installment plans may be considered under TILA. *See, e.g., Coleman v. Crossroads Lending Grp.*, No. 09-CV-0221, 2010 WL 4676984 (D. Minn. 2010); *In re Sterten*, 352 B.R. 380 (Bankr. E.D. Pa. 2006). Nothing in the district court's opinion suggests it believed TILA barred all installment plans. Instead, the district court made a discretionary determination that *this* installment plan would be inequitable. We agree.

There are several factors supporting the district court's rejection of this installment plan. First, the Defendants here are not the wrongdoers. They are subject to liability as assignees, but they were not the ones responsible for the deficiencies in the disclosures giving rise to the Iroanyahs'

claims. Second, these TILA violations were hyper-technical disclosure deficiencies, which Iroanyahs' admitted caused no actual harm. Third, since they remained in their home despite not making mortgage payments since 2008, the Iroanyahs have actually benefitted from the lengthy resolution of these TILA violations. Finally and decisively, the proposed installment plan would have been extremely inequitable for the Defendants, since it would effectively reform the original transaction to become an interest free loan. The district court had ample reason to reject the Iroanyahs' wholly unreasonable installment plan, which would create a windfall for the Iroanyahs. Nothing in the district court's opinion suggests an abuse of discretion in weighing these equitable factors and rejecting the Iroanyahs' installment plan.

At oral argument, the Iroanyahs claimed, without support, that if the district court was unsatisfied with the Iroanyahs' installment plan, then it should have imposed another more equitable installment plan. Again, the Iroanyahs direct our attention to many cases where courts have imposed installment plans. While these cases suggest that an installment plan may be within the court's discretion to impose, they in no way hold that *not implementing* an installment plan is an abuse of discretion. *See, e.g.*, *Coleman*, 2010 WL 4676984 at *8–9; *Sterten*, 352 B.R. at 389–90. The district court was not required to create an installment plan—a judge's discretion to amend rescission procedures is not so limited. *Cf. Yamamoto*, 329 F.3d at 1173.

Finally, the Iroanyahs complain that the ninety day repayment plan was "unworkable," and thus an abuse of discretion. However, the Iroanyahs are entitled to an equitable plan, but not necessarily one that circumstances will ac-

commodate. Here, as with their primary contentions discussed above, the Iroanyahs misunderstand the nature of rescission. Even the powerful right to rescind under TILA does not guarantee that the Iroanyahs can actually comply with the terms of rescission. *See Marr* 662 F.3d at 968. Here, it is clear that the Iroanyahs are simply not financially able to take advantage of rescission. As the district court noted, courts have imposed repayment periods ranging from less than one month to more than a year. *See e.g.*, *Shelton*, 486 F.3d at 821 (requiring immediate tender); *Hughes*, 938 F.2d at 890 (requiring tender within a year). The Iroanyahs requested six months to repay, while the Defendants requested that they be given only one month to repay—neither party provided a compelling reason for their proposal. Ultimately the district court set the repayment period at ninety days, determining that "thirty days would be too short for most borrowers [to obtain financing], while six months would be too long, for if the Iroanyahs cannot obtain refinancing in three months, it is unlikely they could do so in six." The Iroanyahs never actually attempted to secure financing, nor did they submit evidence showing that the court's chosen procedure would render any attempt to secure financing impossible.

Therefore, considering the broad discretion the district court had to set these rescission procedures, and the wide range of time periods other courts have found reasonable, we find nothing about the district court's ninety day period to suggest an abuse of discretion.

**III.**

In the final issue on appeal the Iroanyahs challenge the amount of attorneys' fees awarded by the district court. In general, we are deferential to a court's determination of attorneys' fees. *E.g.*, *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). Nothing in the record suggests that the district court abused that discretion in either reducing the lodestar for the Iroanyahs' fee request based on their limited success or in reducing the hourly rate for the Iroanyahs' lead counsel.

The Iroanyahs argue first that the district court erred by reducing the award on the basis of their limited success in the matter. Initially, the district court accepted Iroanyahs' figure of 87.1 hours, which was to be split between BOA and BNY. This figure serves as the "lodestar" or the starting point for the calculation of attorneys' fees. However, the district court then reduced the lodestar because the Iroanyahs were only successful on one of their claims. In the context of a fee-shifting statute like TILA, when a party has success on some grounds, but not others, a court has discretion to reduce the lodestar accordingly. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010)("[T]he critical inquiry in this case is whether the district court's fee award is reasonable in relation to the results … actually obtained.").

The Iroanyahs do not challenge the amount by which the district court reduced the lodestar (50%). Instead, they challenge whether *any* reduction was reasonable. Their argument is premised upon the alleged error the district court made in conditioning rescission upon repayment. As we have discussed, the district court made no such error. The

Iroanyahs sought damages and rescission under TILA—they succeeded only in being awarded damages. Therefore, the Iroanyahs' theory of the case was not, as they argue, fully vindicated, and the district court was well within its discretion in reducing the lodestar.

The Iroanyahs also asserted three grounds to support a fee of $500 per hour for their lead counsel, Mr. Brooks: the Laffey Matrix, a list of 56 cases Mr. Brooks litigated in the Northern District of Illinois and other TILA cases in the Northern District of Illinois where hourly rates awarded were between $450 and $475. The district court addressed each of these grounds. The Laffey Matrix is a chart of hourly rates in the Washington, D.C. area. However, the district court correctly noted that it is not determinative, or even persuasive, evidence of a reasonable hourly rate in the Northern District of Illinois. *See Pickett*, 664 F.3d at 649–50 (noting the varying degree of skepticism with which courts view the Laffey Matrix, especially outside of the D.C. Circuit). The district court did not find the list of Mr. Brooks' cases in the Northern District of Illinois persuasive because that list did not identify which cases were similar to this one, giving no basis for the comparison. Finally, the district court rejected evidence of other attorneys' fee awards for TILA cases in the Northern District, because that evidence shows only that some attorneys in the Northern District of Illinois merited an hourly award higher than $350 in TILA actions, but not why Mr. Brooks would be entitled to a similar rate.

Instead, the district court relied upon Mr. Brooks' $350 hourly rate in a 2009 TILA case he litigated in this district, which the court raised to $375 to match the unchallenged hourly rate of his junior counsel. The court noted that "the

$350 hourly rate recently approved in one of Brooks' other TILA cases is better evidence of his market rate than the rates approved for other attorneys." Thus, the district court, contrary to Iroanyahs' assertions, adequately addressed each of the grounds upon which they based their fee award, and finding them unpersuasive, reduced the fee. There is nothing in the district court's opinion which would suggest it abused its discretion in reducing the hourly rate.

We affirm.