FILED
United States Court of Appeals
Tenth Circuit

July 24, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SCOTT SANDERS; LISA SANDERS,

    Plaintiffs - Appellants,

v.

MOUNTAIN AMERICA CREDIT
UNION,

    Defendant – Appellee.

No. 14-4142
(D.C. No. 2:10-CV-00183-DAK)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **MATHESON**, and **BACHARACH**, Circuit Judges.
_____

Scott and Lisa Sanders appeal from the district court's entry of summary

judgment in favor of Mountain America Credit Union (MACU) on their claims under

the Truth in Lending Act, 15 U.S.C. § 1601 et seq. We have jurisdiction under

28 U.S.C. § 1291 and affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

### A. *TILA Provisions*

In certain consumer credit transactions secured by the borrower's principal dwelling, the Truth in Lending Act (TILA) provides the consumer with a right to rescind. *See* 15 U.S.C. § 1635(a). The creditor is required to "*clearly and conspicuously* disclose [that right] in accordance with regulations of the Bureau [of Consumer Financial Protection]." *Id.* (emphasis added).[1] TILA's implementing regulations (collectively known as Regulation Z) require creditors to "deliver two copies of the notice of the right to rescind to each consumer entitled to rescind." 12 C.F.R. § 226.23(b)(1). Among other things, the notice must set out "[t]he date the rescission period expires," 12 C.F.R. § 226.23(b)(1)(v), which is "midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section [15 U.S.C. § 1635] together with a statement containing the material disclosures required under this subchapter, whichever is later," 15 U.S.C. § 1635(a). But if "the required notice or the material disclosures are not delivered, the right to rescind . . . expire[s] three years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first." 12 C.F.R. § 226.23(a)(3).

---

[1] Congress originally delegated regulatory authority to the Board of Governors of the Federal Reserve Board but transferred that authority to the Bureau of Consumer Financial Protection as of July 21, 2011. *See* 12 U.S.C. §§ 5581(b)(1), (d); 75 Fed. Reg. 57252-02, 57253 (Sept. 20, 2010).

B. *Refinance Transaction*

In 2007, the Sanderses attempted to refinance their home with their then-current lender, CityWide Home Loans. CityWide was apparently satisfied with the Sanderses' initial credit reports, but during underwriting it discovered twelve new accounts on those reports that adversely affected the Sanderses' credit scores and caused CityWide to refuse to close the refinancing. As it turns out, MACU's predecessor in interest, the Salt Lake City Credit Union (SLCCU), erroneously placed the new accounts on the reports. When confronted, SLCCU apologized for the erroneous reporting, promised to correct it, and offered the Sanderses a no-cost refinance, which they accepted. They consummated that transaction in July 2007, obtaining a loan of approximately $283,000 that was secured by a deed of trust on their house.

The transaction was subject to TILA's rescission right, and at closing, SLCCU presented the Sanderses with four copies of a notice of their right to rescind (Right to Cancel). Scott Sanders signed one copy in the box indicating he had received two copies of the notice. Lisa Sanders did the same. SLCCU retained those signed copies and allowed the Sanderses to take the two unsigned copies with them. SLCCU also required the Sanderses to sign a post-dated "Statement of Non-Rescission" indicating that the three-day rescission period had passed and that they had not exercised their rescission right. Aplt. App. at 158.

C. *Attempt to Rescind, Foreclosure, First District Court and Circuit Court Decisions*

After going into default on the loan, unsuccessfully trying to renegotiate it with MACU, and apparently facing foreclosure, the Sanderses sought to rescind the loan transaction. They filed the underlying action on March 2, 2010, asserting they were exercising their right to rescind and would tender to MACU possession and title to their house upon MACU's release of the security interest, consistent with 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(2). As relevant to their TILA claim, the Sanderses alleged that MACU (in the form of SLCCU) failed to clearly and conspicuously disclose their rescission right by failing to provide each of them with two copies of the Right to Cancel and by having them sign the Statement of Non-Rescission. They claimed their request for rescission nearly three years after closing was therefore timely and should be honored under 15 U.S.C. § 1635(b). They also sought actual and statutory damages and attorney fees.

MACU foreclosed on the property and purchased it at the foreclosure sale on March 23, 2010. On April 20, 2010, the Sanderses signed their copies of the Right to Cancel in the box indicating they wished to rescind their transaction and sent those copies to MACU.

In December 2010, the district court dismissed the rescission claim, explaining the Sanderses had not pled an ability to repay the loan principal. The court dismissed their TILA damages claims, which it construed as arising from the alleged TILA violations at closing, because they were filed after the applicable one-year statute of

limitations contained in 15 U.S.C. § 1640(e). In July 2012, this court reversed the dismissal of the Sanderses' rescission claim, holding that TILA does not require a consumer to plead an ability to repay to state a claim upon which relief can be granted. *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1143 (10th Cir. 2012). The panel noted that the Sanderses did not appeal the dismissal of their TILA damages claim as time-barred. *Id.* at 1141 n.1.[2]

Meanwhile, after the March 2010 foreclosure and up until January 2012, the Sanderses continued to live in their house, and MACU charged them no rent. But then MACU began eviction proceedings against the Sanderses. Fearful of being held liable for treble damages and attorney's fees if they continued to occupy their house, the Sanderses moved out the next month. MACU sold the house in April 2012.

D. *Second District Court Decision*

After our remand in the first appeal, the parties filed cross-motions for summary judgment on the TILA rescission claim.[3] The Sanderses also moved to strike the declaration of Cathy Smoyer, MACU's Senior Vice-President and Chief

---

[2] The panel also reversed the dismissal of the Sanderses' Equal Credit Opportunity Act claim and affirmed the dismissal of their Fair Credit Reporting Act claim. *Sanders*, 689 F.3d at 1146-47.

[3] After the remand, the Sanderses apparently pursued only their TILA rescission claim. *See* Memorandum And Brief of Borrower's Tender Obligation Where Lender Has Forcibly Taken Possession Of The Property at 1, *Sanders v. Mountain Am. Credit Union*, No. 2:10cv00183 (D. Utah Apr. 1, 2013) (Sanderses' brief after remand stating that "[t]he remaining issue in the Sanders' [sic] case is as follows: What becomes of the borrower's tender obligation when the creditor disposes of the collateral during the rescission lawsuit destroying the borrowers' ability to restore the creditor to the status quo ante?").

Risk Officer. The district court granted MACU's motion and denied both of the Sanderses' motions. It reasoned that MACU substantially complied with TILA's requirement to provide two copies of the Right to Cancel to each consumer when it presented four copies to the Sanderses and retained two, observing the Sanderses had cited no law stating such a procedure violated TILA. The court also ruled that TILA did not prohibit the use of the post-dated Statement of Non-Rescission. It also concluded that even if allowing each of the Sanderses to retain only one copy of the Right to Cancel or using the Statement of Non-Rescission amounted to a technical TILA violation, the Sanderses sustained no prejudice or damage. For these reasons, the court determined that the TILA rescission period did not extend to three years and their rescission request was time-barred.

Alternatively, the district court assumed that the rescission period was extended to three years, reordered the TILA rescission process as a matter of equity, and effectively denied rescission based on a finding that the Sanderses failed to show they could repay MACU. The court also held that, because the Sanderses failed in the first appeal to challenge the dismissal of their damages claims on limitations grounds, the law of the case barred them from seeking damages based on MACU's failure to honor their request for rescission. The court concluded that, in any event, the Sanderses would not be entitled to damages arising from MACU's failure to honor their rescission request because they were entitled to only a three-day rescission period, the equities favored reordering the rescission process, and MACU's actions did not violate TILA.

- 6 -

## II. **DISCUSSION**

"We review the district court's summary judgment order de novo, and apply the same legal standards as the district court." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Doe*, 667 F.3d at 1122 (internal quotation marks omitted).

### A. *Issues Raised but not Addressed*

The Sanderses characterize TILA as a strict liability statute and renew their argument that the failure to provide a sufficient number of copies of the Right to Cancel extended the rescission period to three years. Although an interesting legal issue of first impression in this circuit,[4] we need not decide it. Nor must we address their arguments that the use of the Statement of Non-Rescission violated TILA and extended the rescission period (another matter of first impression in this circuit), or

---

[4] In *Smith v. Argent Mortg. Co.*, 331 F. App'x 549, 557-58 (10th Cir. 2009), we reviewed for clear error a district court's finding that two borrowers (a husband and wife) had each received two copies of notice, stating that "TILA provides that *each borrower* must receive two copies of a notice of the right to rescind." Although we cited 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(b)(1) in support of the quoted statement, *Smith* was not published, and we did not analyze what it means for a creditor to "deliver two copies of the notice of the right to rescind to each consumer entitled to rescind," 12 C.F.R. § 226.23(b)(1).

that the district court erred in applying the law of the case to bar their rescission-damages claim.

B. *No Abuse of Discretion on Equitable Reordering of Rescission*

Our affirmance of the district court's decision rests solely on its alternative holding that even if the rescission period extended to three years, the equities favored reordering TILA's rescission procedure, and the Sanderses failed to show they could tender their obligation to MACU. To understand that determination, it is helpful to review the TILA rescission process and the reasons for altering it.

1. **TILA Rescission Process**

Typically, when a consumer exercises the TILA rescission right, the security interest "becomes void," the consumer is not "liable for any amount, including any finance charges," and "[w]ithin 20 calendar days after receipt of a notice of rescission," the creditor is required to "return any money or property that has been given to anyone in connection with the transaction and [to] take any action necessary to reflect the termination of the security interest." 12 C.F.R. § 226.23(d)(1), (2). The borrower may retain possession of "any money or property" that the creditor had delivered until the creditor complies with those statutory obligations. *Id.* § 226.23(d)(3). But once the creditor complies with its obligations, the consumer must "tender the money or property to the creditor." *Id.* Where, as here, a creditor has delivered money to a consumer that is used to finance real property, the consumer must tender money to the creditor, not the real property. *See Sanders*, 689 F.3d at 1145 (holding that "the borrower cannot satisfy its rescission obligations by simply

- 8 -

surrendering the property purchased with the loan proceeds regardless of whether doing it will restore the creditor to the status quo ante”).

This process works well when the consumer exercises the rescission right within the three-day period. *Id.* at 1142. But when the consumer seeks to exercise that right later, “TILA rescission often imposes an unfair risk on creditors: it requires the creditor to release its security interest without assurance that the consumer stands ready to honor his or her own rescission obligations.” *Id.* at 1142-43. “This problem is particularly acute when the consumer resorts to TILA rescission because of an impending foreclosure or bankruptcy. Thus, courts routinely exercise their equitable powers to ensure consumers can honor their rescission obligations before requiring creditors to release their security interests.” *Id.* at 1143; *see also* 15 U.S.C. § 1635(b) (providing that the ordinary TILA rescission procedure applies “except when otherwise ordered by a court”). Hence, “in an appropriate case,” a district court may reorder the sequence by “us[ing] its equitable powers to protect a creditor’s interests during the TILA rescission process.” *Id.* at 1144.

Further, a majority of circuit courts have held “that unilateral notification of cancellation does not automatically void the loan contract” or the security interest. *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007). As the Fourth Circuit explained, more is required to void the security interest:

> “[T]he security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the

> appropriate decision maker has so determined. Until such decision is made, the borrowers have only advanced a claim seeking rescission."

*Id.* (ellipsis and brackets omitted) (quoting *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)); *see also Yamamoto*, 329 F.3d 1172 (rejecting notion that consumer can unilaterally cause security interest to become void by simply tendering notice of rescission because "[o]therwise, a borrower could get out from under a secured loan by simply *claiming* TILA violations, whether or not the lender had actually committed any"); *cf. Iroanyah v. Bank of Am.*, 753 F.3d 686, 691-92 & n.4 (7th Cir. 2014) (stating that TILA gives a "borrower the ability to unilaterally initiate rescission" but "not . . . the right to rescind their own obligations without also making the lender whole through tender"); *but see Williams v. Homestake Mortg. Co.*, 968 F.2d 1137, 1140-42 (11th Cir. 1992) (concluding that rescission is "automatic" but holding that the voiding of a security interest may be judicially conditioned on borrower's tender of amount due). We agree with the majority approach, at least where, as here, the consumer provides notice of an intent to rescind outside of TILA's three-day period.

## 2. **District Court's Equitable Reordering Decision**

In this case, the district court invoked its equitable powers and reordered the rescission process by requiring the Sanderses to show they could repay MACU. As the court noted, they never expressly alleged that ability. It rejected the Sanderses' arguments that the equities for reordering were not in MACU's favor. The court accepted Ms. Smoyer's declaration testimony that MACU had not pursued a

deficiency judgment against the Sanderses for the approximate $100,000 difference between what MACU bid on the foreclosure sale and the amount the Sanderses owed on the loan.[5] The court also observed that MACU had let the Sanderses live in the house for almost two years rent-free. It rejected the Sanderses' argument that by foreclosing and initiating the eviction proceedings, MACU waived its right to the Sanderses' tender obligation and was estopped from claiming that tender was impossible.

The court observed that MACU was within its rights to initiate eviction proceedings because the Sanderses never sought a stay pending appeal of the district court's initial dismissal of their TILA claims. It found that it was not improper for MACU to initiate the eviction proceeding because MACU's counsel did not believe that the parties' agreement to allow the Sanderses to live in the house during the pendency of the case extended to the first appeal. The court further rejected the argument that the present value of the property (circa mid-2014, after some rebound in the real estate market) might be used to complete the rescission process, explaining that the current owner could have added to the house or the house could have fallen

---

[5] The court denied the motion to strike Ms. Smoyer's declaration because she was a records custodian for MACU and had knowledge of MACU's actions surrounding the foreclosure and sale of the property. In their appellate briefs, the Sanderses refer to the denial of their motion to strike Ms. Smoyer's declaration but have not raised it as a separate issue or provided any grounds for concluding that the district court abused its discretion in denying their motion, *see Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 606 n.3 (10th Cir. 1998) (stating that we review the denial of a motion to strike a summary-judgment witness's affidavit for an abuse of discretion).

into disrepair.  Thus, the court found that strict adherence to the TILA rescission process would be impossible or impracticable.

3. **Abuse of Discretion Review**

We review a district court's equitable reordering of the TILA rescission process for abuse of discretion.  *See Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1173 (9th Cir. 2003).  A district court abuses its discretion when it commits an error of law or relies on clearly erroneous factual findings.  *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1252 (10th Cir. 2006).  It can also abuse its discretion by issuing "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment."  *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007) (internal quotation marks omitted).  We perform our review in this case by addressing the Sanderses' arguments.  They must show the district court abused its discretion, and they attempt to do so by arguing the district court overlooked a number of equitable factors that favor them.

First, the Sanderses point to the dozen erroneous credit lines SLCCU placed on their credit reports and allege the reports were not repaired for years.  But they advanced no viable claim on that matter (we affirmed the dismissal of their Fair Credit Reporting claim in the first appeal, *see Sanders*, 689 F.3d at 1147), and there is no evidence from which any equitable determination could be made about whether SLCCU acted with improper purpose.

Second, they claim MACU's foreclosure on the house after they sought to rescind was a TILA violation because the security interest was voided.  But this

- 12 -

argument misunderstands the effect of a notice of rescission. As explained above, merely giving notice to the creditor that the borrower wishes to rescind does not automatically and immediately void the creditor's security interest. Thus, MACU fairly pursued its foreclosure rights after the Sanderses filed their action and sought rescission. This also forecloses the Sanderses' further argument that the district court abused its discretion in considering that MACU did not charge them rent while they were living in the house after the foreclosure sale because they no longer had title.

Third, the Sanderses contend that MACU wrongly refused to honor their tender of the house as full or partial satisfaction of their tender obligation. But MACU had no obligation to accept that tender. *See Sanders*, 689 F.3d at 1145 (rejecting notion that mere tender of property bought with proceeds of a loan subject to TILA satisfies obligation to restore creditor to status quo ante).

Fourth, they complain that MACU wrongly evicted them while their judicial case was ongoing and despite a representation by its counsel that it would allow them to prosecute their claim. But as the district court pointed out, they did not seek to stay the order dismissing their TILA claim, and MACU's counsel did not believe any such agreement extended to the first appeal. The Sanderses' contention that they could not afford to post an appeal bond does not render MACU's eviction action inequitable.

Fifth, the Sanderses dispute the district court's reliance on MACU's decision not to pursue a deficiency judgment against them, arguing that a Utah statute of limitations would now bar any such claim and that the claim should have been (but

never was) raised as an offset, affirmative defense, or counterclaim in this action. These arguments ignore that MACU's election *not* to seek a deficiency judgment when it could have done so weighs in its favor on the scales of equity—the Sanderses benefitted by MACU's decision to forego seeking the approximately $100,000 deficiency.

Sixth, they contend that when MACU sold the house, it waived its right to seek tender from them (or was equitably estopped from doing so), and they summarily state it "was always false" that they could not tender. Aplt. Opening Br. at 35 (emphasis omitted). We disagree. In the absence of a stay pending the prior appeal, nothing prevented MACU from pursuing eviction proceedings and selling the house. The Sanderses' arguments lack legal foundation: that MACU should have permitted them to stay in the house until market conditions were favorable enough for them to sell it at a price that would cover their debt, or that the current market value of the house could somehow be used to constructively satisfy their obligation to restore MACU to the status quo ante. Further, the Sanderses have never provided any evidence that they could have satisfied even the difference between whatever MACU recovered through selling the house and the amount they owed.

In sum, we see no abuse of discretion in the district court's weighing of the equities, its decision to reorder TILA's rescission process, and its finding that the Sanderses could not meet their tender obligation. The Sanderses defaulted on their loan and failed to protect their possessory interests through a stay-pending-appeal of the district court's initial dismissal of their TILA claim. MACU did not pursue a

- 14 -

deficiency judgment against them, did not seek rent from them post-foreclosure, and waited until their TILA claims were dismissed before initiating eviction proceedings. In essence, the Sanderses ask us to reweigh the equities, but that is not our role under the abuse-of-discretion standard of review.

The judgment of the district court is affirmed.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge